# EX PARTE HARDING, PETITIONER.

No. —. Original. Submitted December 12, 1910.—Decided February 20, 1911.

The general rule that a court, having jurisdiction over the subjectmatter and the parties, is competent to decide questions arising as to its jurisdiction and that its decisions on such questions are not open to collateral attack, applied in this case; and mandamus refused to compel the Circuit Court to remand a case in which it decided that it had jurisdiction on the issues of citizenship and separable controversy.

There is nothing peculiar in an order of the Circuit Court refusing to remand which differentiates it from any other order or judgment of a Federal Court concerning its jurisdiction.

In this case the exceptional rule that mandamus will lie to the Circuit Court to correct an abuse of judicial discretion in retaining a case over which it has not jurisdiction does not apply.

It is the duty of this court to reconcile decisions and, in order to enforce the correct doctrine, to determine which rest upon the right principle and to overrule or qualify those conflicting therewith.

Conflicting decisions regarding issuing mandamus to the Circuit Court to correct its decisions in regard to jurisdiction over cases removed from the state court reviewed and harmonized.

In this case, *Ex parte Hoard,* 105 U. S. 578, and cases following it applied, as expressing the general principle involved; *Virginia* v. *Rives,* 100 U. S. 313, and cases following it distinguished, as applicable only to exceptional instances not involved in this case; *Ex parte Wisner,* 203 U. S. 449; *In re Moore,* 209 U. S. 490, and *In re Winn,* 213 U. S. 458, disapproved in part and qualified.

THE facts are stated in the opinion.

*Mr. William J. Ammen* for petitioner:

The original removal petition, whether considered alone or in connection with the entire record, not only failed to show a removable case, but affirmatively showed that the case was not removable under the law, on the ground of diverse citizenship. *In re Moore,* 209 U. S. 490; *Ex parte Wisner,* 203 U. S. 449; *Southern Pacific Co.* v. *Burch,* 152 Fed. Rep. 168; *Goldberg &c. Co.* v. *German Ins. Co.,* 152 Fed. Rep. 831; *Yellow Aster Co.* v. *Crane Co.,* 150 Fed. Rep. 580; *Gillespie* v. *Pocahontas &c. Co.,* 160 Fed. Rep. 742; *Blunt* v. *Southern Ry. Co.,* 155 Fed. Rep. 499; *Boston Mining Co.* v. *Montana Ore Co.,* 188 U. S. 632, 640; *In re Winn,* 213 U. S. 464; *McClellan* v. *McKane,* 159 Fed. Rep. 165; *Hooe* v. *Jamieson,* 166 U. S. 395.

No separable controversy was pointed out in said original petition for removal, as required by the decisions. *Gibbs* v. *Crandall,* 120 U. S. 105, 108; *Gold Washing Co.* v. *Keyes,* 96 U. S. 199; *Newcastle* v. *Postal Co.,* 152 Fed. Rep. 572.

The claim of separable controversy between said Corn Products Company, and Harding, is so absurd upon a mere cursory reading of the bill of complaint that the Circuit Court should not have considered the same; and

relief by mandamus should not be refused on the ground that a decision of that question involved judicial discretion, although the exercise of judicial discretion on such a question might be required in a case where such question appears to be reasonably disputable.

Even if such separable controversy existed, the citizenship of the alleged parties thereto was not such as to make the case removable, under the law.

The alleged removal was void upon the further ground that the state court was not permitted to examine, and consider, and pass upon, the removal petition.

The order of the Circuit Court ordering the transcript of record of state court filed in Circuit Court, and enjoining Harding from the further prosecution of his suit in the state court, until the further order of the Circuit Court, was void.

The so-called supplement filed in the Circuit Court was unauthorized and void, and did not and could not help out the original removal petition filed in the state court.

Harding is not chargeable with laches. He has never waived his right to have said original motion to remand allowed.

The Circuit Court had no power to allow the amendment to the removal petition changing the vital averments made in said original removal petition filed in the state court. *Powers* v. *Chesapeake & O. R. R. Co.*, 169 U. S. 92, 101; *Shane* v. *Butte &c. Co.*, 150 Fed. Rep 801; *Crehore* v. *Railway Co.*, 131 U. S. 240; *Jackson* v. *Allen*, 132 U. S. 27; *Graves* v. *Corbin*, 132 U. S. 572, 590; *Martin's Admr.* v. *Railroad Co.*, 151 U. S. 673, 691; *Carson* v. *Dunham*, 121 U. S. 421, 427; *Fife* v. *Whittell*, 102 Fed. Rep. 537; *Dalton* v. *Milwaukee Ins. Co.*, 118 Fed. Rep. 876; *Stone* v. *South Carolina*, 117 U. S. 430; *Cameron* v. *Hodges*, 127 U. S. 322; Moon on Removal of Causes, § 165: *Fitzgerald* v. *Missouri Pacific Ry Co.*, 45 Fed. Rep. 812; *Macey Co.* v. *Macey*, 135 Fed. Rep. 725, 729, 730; *Santa*

*Clara County* v. *Goldy Machine Co.*, 159 Fed. Rep. 750; *Wallenburg* v. *Missouri Pacific Ry. Co.*, 159 Fed. Rep. 217; *Healy* v. *McCormick*, 157 Fed. Rep. 218; *Holton* v. *Helvitia &c. Co.*, 163 Fed. Rep. 659; *Kinney* v. *Columbia Assn. Co.,* 191 U. S. 78; *Murphy v̌. Gold Co.*, 98 Fed. Rep. 321.

The orders permitting petitioner to amend, and allowing such amendment to be filed, the said amendment so filed, and all subsequent proceedings based thereon, were wholly without power or jurisdiction of the Circuit Court, and void.

It clearly appearing that Harding will be entitled to a remand of his case after a tedious and expensive hearing on the merits, on appeal from whatever decree may be then entered, this should be duly considered by this court, as even the certainty of such ultimate remand does not constitute an adequate remedy in the premises.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

By a motion for leave to file a petition for mandamus, George F. Harding seeks the reversal of the action of the Circuit Court of the United States for the Northern District of Illinois, Eastern Division, in taking jurisdiction over a cause as the result of a refusal to grant a request of Harding to remand the case to a state court. The facts shown on the face of the motion papers are these:

On October 19, 1907, George F. Harding, the petitioner, alleging himself to be a resident of the State of California, sued in an Illinois state court various corporations alleged to be created by and citizens of the State of New Jersey and fourteen individuals whose citizenship and residence were not given. The suit was brought by Harding as a stockholder in the Corn Products Company, one of the defendants, and the object of the suit was to annul an al-

leged unlawful merger of that company and for relief in respect of an asserted misappropriation of its assets. On November 6, 1907, the Corn Products Company applied to remove to the Circuit Court of the United States for the Northern District of Illinois, Eastern Division, on the ground that there was a separable controversy between it and Harding. By separate petitions all the other defendants united in the prayer for removal. The state court not having acted on the petition for removal, the judge of the United States court, upon the application of the Corn Products Company, ordered the transcript of record from the state court to be filed and the case to be docketed. This being done, the Corn Products Company filed what was styled an amendment and supplement to the petition for removal, stating the residence and citizenship of the individuals named as defendants in the original bill, four of them being averred to be residents of Chicago, Illinois, one of Pekin, Illinois, and the others citizens and residents of States other than Illinois.

In December, 1907, Harding moved to remand to the state court, in substance upon the ground that there was no separable controversy and that the requisite diversity of citizenship was not shown by the petition for removal, and especially directed attention to the fact that at the time of the commencement of the suit in the state court he, Harding, was not a resident of the district, and that none of the corporate defendants were such residents.

Prior to the bringing of the Harding suit a suit had been brought in an Illinois state court by the Chicago Real Estate and Trust Company, an Illinois corporation and a stockholder in the Corn Products Company, upon substantially the same grounds as those subsequently alleged in the Harding suit, against the principal corporations and individuals who were thereafter made defendants in the Harding suit. This cause had been removed by the Corn Products Company into the Circuit Court of the United

States for the Northern District of Illinois, Eastern Division, and on its removal, at the instance of the Corn Products Company the court had restrained the real estate company, its officers, agents, attorneys, etc., from further prosecuting the cause in the state court. Immediately after the bringing of the Harding suit in the state court the Corn Products Company applied to the Circuit Court, in the real estate company suit, to restrain Harding from prosecuting his suit on the ground that the bringing of the same was a violation of the previous restraining order. The court issued a temporary restraining order. Thereafter, as we have said, the Harding suit was removed on the application of the Corn Products Company to the Circuit Court of the United States, and the motion to which we have referred was made by Harding to remand. That motion to remand, however, in consequence of the restraining order, which had been made permanent, was not heard until the summer of 1909, after the restraining order above referred to had been dissolved by the Circuit Court of Appeals. 168 Fed. Rep. 658. Before the motion to remand, however, was passed upon the Circuit Court granted permission to the Corn Products Company to amend its removal petition by alleging that at the time of the commencement by Harding of his suit and continuously thereafter he was a citizen of Illinois and a resident of Chicago in that State. To this Harding objected on the ground that the court was without power to allow an amendment, and that its jurisdiction was to be tested by the averments of the original removal petition. The permitted amendment having been filed, the motion to remand was denied. Harding thereupon, reiterating his objection to the allowance of the amendment and to the jurisdiction of the court to do other than remand the cause, traversed the averment in the amended removal petition as to his Illinois citizenship and residence, and specially prayed "that there may be a speedy hearing and a decision of such issue of citizen-

ship and a remand of this cause to the state court by the order of this court, . . ." The request for hearing was granted. A large amount of evidence was introduced on such hearing, which extended over a period of more than fifteen months, and the taxable costs, it is said, "ran up into several thousands of dollars." Finally, on October 25, 1910, the issue was decided against Harding. 182 Fed. Rep. 421. The court, finding from the proof that Harding was, as alleged in the amended petition, a citizen and resident of the State of Illinois, expressly refused the prayer for removal made by Harding in his answer to the amended petition; in other words, the court reaffirmed and reiterated its previous action in refusing to remand the cause. Whether these facts give such color of right to the contention that we have jurisdiction to review the action of the trial court by the writ of mandamus as to lead us to be of opinion that further argument at bar is necessary, and therefore a rule to show cause should issue, is then the question for decision.

The doctrine that a court which has general jurisdiction over the subject-matter and the parties to a cause is competent to decide questions arising as to its jurisdiction, and therefore that such decisions are not open to collateral attack, has been so often expounded (see *Dowell* v. *Applegate*, 152 U. S. 327, 337, and cases cited), and has been so recently applied (*Hine* v. *Morse*, 219 U. S. 493), that it may be taken as elementary and requiring no further reference to authority. Nor is there any substantial foundation for the contention that this elementary doctrine has no application to decisions of courts of the United States refusing to remand causes to state courts, since there is nothing peculiar in an order refusing to remand which differentiates it from any other order or judgment of a court of the United States concerning its jurisdiction. The importance of the subject which is involved in the contrary assertion, the apparent conflict between certain

decided cases dealing with the right to review by mandamus orders of Circuit Courts refusing to remand, and a long and settled line of other cases relating to the same subject, the confusion and misapprehension which must result unless the conflict is reconciled or abated, and the duty to remove obscurity, as far as it may be done, concerning the review of questions of jurisdiction, all lead us to give the subject a more extended examination than it would otherwise be entitled to receive.

In *Ex parte Hoard*, 105 U. S. 578, the court was called upon to consider whether the judgment of a Circuit Court of the United States, declining to remand a civil cause to a state court from which it had been removed, was reviewable by the extraordinary process of mandamus. In refusing to exert jurisdiction by mandamus and considering the inherent nature of the powers of a Circuit Court, it was declared that "Jurisdiction has been given to the Circuit Court to determine whether the cause is one that ought to be remanded," and it was also observed that "No case can be found, however, in which a mandamus has been used to compel a court to remand a cause after it has once refused a motion to that effect." Calling attention to the fact that the act of 1875, in § 5, expressly gave an appeal to or a writ of error from this court for the review of orders of Circuit Courts remanding causes, without regard to the amount involved, the court said: "The same remedy has not been given if a cause is retained. It rests with Congress to determine whether a cause shall be reviewed or not. If no power to review is given, the judgment of the court having jurisdiction to decide is final."

In *In re James Pollitz*, 206 U. S. 323, the facts were these: Pollitz, a citizen of the State of New York, sued in the Supreme Court of that State the Wabash Railroad Company, a consolidated corporation existing under the laws of the States of Ohio, Michigan, Illinois and Missouri, and a citizen of the State of Ohio, and various other defend-

ants, chiefly citizens and residents of the State of New York. The Wabash Company removed the cause to the Circuit Court of the United States, on the ground of a separable controversy. A motion of Pollitz to remand was denied. The controversy was decided by this court on the hearing of a rule, which was granted on the application of Pollitz for a writ of mandamus to direct the remanding of the cause. The court, after stating (p. 331) the general rule that "mandamus cannot be issued to compel the court below to decide a matter before it in a particular way or to review its judicial action had in the exercise of legitimate jurisdiction, nor can the writ be used to perform the office of an appeal or writ of error," refused to take jurisdiction and review the action of the court below, and therefore declined to issue the writ.

*Ex parte Nebraska*, 209 U. S. 436, presented the following facts: In a suit against a railway company, commenced in a court of the State of Nebraska, the State, its attorney general, the railway commission and the members of the commission individually were plaintiffs. The defendant railway removed the cause to the United States court, upon the ground that the State was not a proper or necessary party to the suit, and that the controversy was wholly between citizens of different States. A motion to remand having been denied by the Circuit Court, this court issued a rule to show cause why a mandamus should not be allowed ordering the remanding of the cause. Upon the hearing on the return to this rule the court declined to take jurisdiction and review the action of the trial court. It was said that the Circuit Court had jurisdiction to pass upon the questions raised by the motion to remand, and if error was committed in the exercise of its judicial discretion "the remedy is not by writ of mandamus, which cannot be used to perform the office of an appeal or writ of error." After declaring that "the applicable principles have been laid down in innumerable cases," the court cited

*Ex parte Bradley*, 7 Wall. 364; *Ex parte Loring*, 94 U. S.
418; *In re Rice*, 155 U. S. 396; *In re Atlantic City Railroad*,
164 U. S. 633. The case of Pollitz was also cited and re-
viewed.

In *Ex parte Gruetter*, 217 U. S. 586, the doctrine of *In re
Pollitz* and *Ex parte Nebraska* was reaffirmed. The case
was this: An action commenced by Gruetter in a state
court was removed into a Circuit Court of the United
States and Gruetter moved to remand. One ground of the
motion was that the case was not removable because it
was not an action of a civil nature, but was one to recover
penalties. It was also urged that the petition and record
did not show that the suit was sought to be removed to
the Circuit Court of the United States for the district in
which either the plaintiff or the defendant resided. On re-
turn to a rule to show cause why a mandamus should not
be granted, the court declined to take jurisdiction of the
case, saying (p. 588):

"There was no controversy as to there being diversity
of citizenship. The defendant was a corporation of Ken-
tucky, and plaintiff was a citizen of Tennessee. Inasmuch
as we are of opinion that the Circuit Court of the United
States had jurisdiction to determine the questions pre-
sented, we hold that mandamus will not lie. The final
order of the Circuit Court cannot be reviewed on this writ.
*In re Pollitz*, 206 U. S. 323."

It is patent from the review of the decided cases just
made that the contention that the order of the court below
refusing to remand the cause is susceptible of being here
reviewed by the extraordinary process of a writ of manda-
mus, in other words, that that writ may be used to subserve
the purpose of a writ of error or an appeal, is so completely
foreclosed as not to be open to contention, unless it be that
other cases which are relied upon as sustaining our juris-
diction to issue the writ of mandamus have either over-
ruled the line of cases to which we have referred, or have

so qualified them as to cause them to be here inapplicable. We therefore come to consider the cases upon which petitioner relies to ascertain whether they sustain either of these views. The cases are *Ex parte Wisner*, 203 U. S. 449, *In re Moore*, 209 U. S. 490, and *In re Winn*, 213 U. S. 458. But to an elucidation of these cases it is necessary that the briefest possible recurrence be had to two leading cases which long preceded them; viz., *Virginia* v. *Rives*, 100 U. S. 313, and *Virginia* v. *Paul*, 148 U. S. 107.

. In *Virginia* v. *Rives* a prosecution of persons accused of murder was removed from a state court to a Circuit Court of the United States. The latter court moreover, under a writ of *habeas corpus cum causa*, took the prisoners from the custody of the state authorities. The case in this court arose upon an application by the Commonwealth of Virginia for a rule to show cause why the prisoners should not be returned to the state court for trial. On hearing this court took jurisdiction over the cause, issued the writ of mandamus and directed the return of the accused. Speaking of the functions of the writ of mandamus, the court said (p. 323): "It does not lie to control judicial discretion, except when that discretion has been abused; but it is a remedy when the case is outside of the exercise of this discretion, and outside the jurisdiction of the court or officer to which or to whom the writ is addressed." It is obvious from the opinion of the court and the concurring opinion that jurisdiction over the cause was taken because of the extraordinary abuse of discretion disclosed by the power attempted to be exerted, the confusion and disregard of constitutional limitations which the asserted power implied, and because under the law as it then stood no power would otherwise have existed to correct the wrongful assumption of jurisdiction by the Circuit Court.

In *Virginia* v. *Paul*, 148 U. S. 107, a person in the custody of the state authorities, charged with murder, was released under a writ of *habeas corpus* issued by a district

judge. Subsequently the Circuit Court of the United States took, by way of removal, jurisdiction over the prosecution. The Commonwealth of Virginia applied to this court for a mandamus to remand the prosecution and to restore the accused to the custody of the State authorities. The court, reaffirming the doctrine of *Virginia* v. *Rives,* pointed out that to wrongfully divest the State of its right to prosecute in its own courts for crimes committed against its authority was a gross abuse of discretion, which if not corrected by mandamus could not be done in any other form. A mandamus to remand was issued. The court, however, declined to review the order discharging on *habeas corpus,* on the ground that on the face of the application for *habeas corpus* issues had been presented which the judge had a right to decide, and if error was committed there was a remedy by appeal.

In *Ex parte Wisner,* 203 U. S. 449, mandamus was sought to compel a Circuit Court of the United States to remand a civil cause to the state court from which it had been removed and which the Circuit Court had refused to remand. The case was one where, although there was diversity of citizenship, neither of the parties resided in the particular district to which the suit had been removed. This court took jurisdiction. Reviewing the action of the court below, it was observed that the absence of residence within the district of either of the parties demonstrated the absolute want of authority of the Circuit Court over the cause, and that even if the objection was susceptible of being waived, a waiver by both parties was essential, and the record did not disclose that there had been such waiver. Considering the right to revise by mandamus the action of the Circuit Court in refusing to remand, no reference whatever was made to the existence of statutory remedies to correct the error found to have been committed, and no authority was cited, it being simply observed: "Our conclusion is that the case should have been remanded, and,

as the Circuit Court had no jurisdiction to proceed, that mandamus is the proper remedy."

*In re Moore,* 209. U. S. 490, was also a case of removal, where there was diversity of citizenship but neither of the parties resided in the particular district. The Circuit Court had refused to remand. Taking jurisdiction to review such action, on application for a writ of mandamus, this court held that as there was diversity of citizenship there was general jurisdiction in the Circuit Court, and that the objection that neither party resided within the district was a matter susceptible of being waived by the parties and that such waiver had taken place. The observations in *Ex parte Wisner* to the contrary were expressly disapproved. The action of the Circuit Court in refusing to remand was consequently approved. No discussion was had or authority referred to upon the question of the right to review by mandamus the action of the Circuit Court, the right to exert such authority having in effect been assumed as the result of the decision in the Wisner case.

In *In re Winn,* 213 U. S. 458, an action commenced in a state court had been removed into a Circuit Court of the United States, not upon diversity of citizenship, but upon the ground that the case stated was one arising under the laws of the United States. The Circuit Court denied a motion to remand. Upon application for mandamus this court took jurisdiction to review such action and directed that the case be remanded, upon the ground that the cause of action when rightly construed did not arise under any provision of the Constitution or under any law of the United States. Referring to some of the previous cases, and manifestly noting an apparent conflict between them, it was said that this court had declined to exert jurisdiction by mandamus in *Ex parte Nebraska* and *In re Pollitz,* because those cases but exemplified the exercise of judicial discretion by the Circuit Court as to a matter within

its jurisdiction, while the case in hand presented a question
of a want of jurisdiction in the Circuit Court, clearly ap-
parent on the face of the record, and therefore that court
when it decided that the cause of action alleged arose un-
der a law of the United States, could not possibly have
exercised a discretion to decide a matter which was within
its jurisdiction. *Virginia* v. *Rives* and *Virginia* v. *Paul*
were approvingly cited, and it was said that in case of a
refusal to remand, "although the aggrieved party may
also be entitled to a writ of error or appeal," mandamus
may be resorted to. On this subject it was further ob-
served: "Mandamus, it is true, never lies where the party
praying for it has another adequate remedy,   .   .   .   but
where, without any right, a court of the United States has
wrested from a state court the control of a suit pending in
it an appeal or writ of error, at the end of long proceedings,
which must go for naught, is not an adequate remedy."

Comprehensively considering the two lines of cases, one
beginning with *Ex parte Hoard*, 105 U. S. 578, and ending
with *Ex parte Gruetter*, 217 U. S. 586, and the other begin-
ning with *Virginia* v. *Rives*, 100 U. S. 313, and ending with
*In re Winn*, 213 U. S. 458, it is to be conceded that they
are apparently in conflict, both as to the assertion of power
which one line upholds to view by mandamus the action of
the United States Circuit Court in refusing to remand and
the non-existence of such power which the other line of
cases expounds, and also as to much of the reasoning in the
opinions in some of the cases. Thus the ruling in *Ex parte
Hoard*, that where in a civil case statutory remedies by er-
ror or appeal are provided for the ultimate review of errors
committed by a court in determining its jurisdiction, such
statutory provisions are, in their nature, exclusive, and
therefore deprive of the right to resort to the remedy by
mandamus, is directly in conflict with the jurisdiction
which was exercised in *Ex parte Wisner, In re Moore* and
*In re Winn*, as those cases were civil cases, and the right

to review the error, if any, committed by the Circuit Court in refusing to remand was regulated by statute. So also the statement, by way of reasoning, in the opinion in *In re Winn*, to the effect that in case of a refusal to remand "the remedy by mandamus is available, although the aggrieved party may also be entitled to a writ of error or appeal," is in direct conflict with the reasoning upon which the decision in *Ex parte Hoard* was based. The conflict just stated becomes more manifest when the ruling in *Virginia* v. *Paul* is considered, since in that case the court declined by mandamus to review the action of the court below in taking one accused of crime by a writ of *habeas corpus* from the custody of the state authorities, on the ground that *prima facie* there was jurisdiction to issue the writ of *habeas corpus*, and a remedy by appeal existed to review the action of the Circuit Court. Moreover, the decision in *In re Pollitz*, that there was not power to review the action of the court below in refusing to remand because the Circuit Court, in passing upon the question as to whether, on the face of the papers, a separable controversy was alleged decided a matter within its jurisdiction, and which involved the exercise of judicial discretion, cannot be harmonized with the ruling in *Ex parte Wisner* and *In re Moore*, that the action of a Circuit Court in refusing to remand could be reviewed by mandamus, because the court, in deciding whether the parties had waived the right to be sued in a particular district, had not been called upon to decide a matter within its jurisdiction involving the exercise of judicial discretion. This conflict becomes more obvious when the ruling in *In re Winn* and *Ex parte Gruetter* are contrasted, the one deciding that the action of the Circuit Court in refusing to remand because, from an analysis of the pleadings, it was found that a claim of Federal right was presented, was reviewable by mandamus, since it was plain, as a matter of law, that the court erred, and therefore its decision involved no element of judicial discretion, and

the other deciding that the denial by a Circuit Court of a
motion to remand based upon the ground, among others,
that on the face of the papers the suit was not removable,
because it was not of a civil nature, but was for a penalty,
was not reviewable by mandamus, because the decision of
such a question was within the jurisdiction of the Circuit
Court, and therefore involved the exercise of judicial dis-
cretion.

We must then either reconcile the cases or if this cannot
be done determine which line rests upon the right principle
and having so determined overrule or qualify the others
and apply and enforce the correct doctrine.  This is the
case, since to do otherwise would serve only to add to the
seeming confusion and increase the uncertainty in the fu-
ture as to a question which it is our plain duty to make
free from uncertainty.  Coming to the origin of the two
lines of cases it is manifest that it was not conceived that
there was conflict between them, since *Virginia* v. *Rives*
and *Ex parte Hoard* were practically contemporaneously
decided and were treated, the one as relating to an excep-
tional condition, that is, an effort to remove a criminal
prosecution which if wrong was committed no power other-
wise to redress than by mandamus existed, and the other
but involved the application of the well-settled rule as to
civil cases concerning which the right to review by error
or appeal was generally regulated by statute.  Following
down the two lines of cases it is equally manifest that it
was never conceived that they conflicted with each other,
because some of the cases were also practically contempo-
raneously decided without the suggestion that one was in
conflict with the other; indeed, the decisions in *In re Moore*
and *Ex parte Nebraska* were announced on the same day.
When the cases are closely analyzed, we think the cause of
the conflict between them becomes at once apparent.  As
we have previously pointed out, no authority was referred
to in *Ex parte Wisner* sustaining the taking in that case of

jurisdiction to review by mandamus the ruling of the Circuit Court, although in the course of the opinion the statement was made with emphasis that the face of the record disclosed an entire absence of jurisdiction in the court below. In the opinion, however, in *In re Pollitz* the Wisner case was referred to and in pointing out why it was not apposite and controlling it was observed that that case (the Wisner) presented a total absence of jurisdiction, involving no element of discretion, and *Virginia* v. *Rives* was cited, manifestly as indicating the basic authority on which the jurisdiction to review by mandamus had been exerted in the Wisner case. Again, in *In re Winn* it is to be observed that not only was *Virginia* v. *Rives* cited, but the cases of *Virginia* v. *Paul* and *Kentucky* v. *Powers*, 201 U. S. 1 (the last of which also concerned a criminal prosecution in which the doctrine of *Virginia* v. *Rives* had been plied), were also cited, evidently for the purpose of pointing out the source from whence came the doctrine of the right to review by mandamus under the facts presented. Bearing these matters in mind it plainly results that the conflict presented has arisen, not because of the announcement in any of the cases of any mistaken doctrine as to jurisdiction, or of any wrongful decision of any of the cases on the merits, but has simply been occasioned, beginning with *Ex parte Wisner*, from applying the exceptional rule announced in *Virginia* v. *Rives* to cases not governed by such exceptional rule but which fell under the general principle laid down in *Ex parte Hoard* and the line of cases which have followed it. Under these circumstances it becomes our plain duty, while not questioning the general doctrine announced in any of the cases, yet to disapprove and qualify *Ex parte Wisner*, *In re Moore* and *In re Winn* to the extent that those cases applied the exceptional rule of *Virginia* v. *Rives*, and thereby obscured the broad distinction between the general doctrine announced in *Ex parte Hoard* and the cases which have followed it and the

exception established by *Virginia* v. *Rives* and the cases which have properly applied the doctrine of that case. Our duty to take this course arises not only because of the misconception which must otherwise continue to exist, but also because it is to be observed that material portions of the act of 1875, which were made the basis of the ruling in *Ex parte Hoard*, are yet in force, and because the cogency of the considerations arising from this fact are greatly increased by the duty to give effect to the provisions of the judiciary act of 1891 concerning the review of final orders and judgments or decrees of the Circuit Courts of the United States.

As then our conclusion is that the case under consideration is not controlled by the ruling in *Ex parte Wisner* or kindred cases, but is governed by the general rule expressed in *Ex parte Hoard* and followed in *In re Pollitz* and *Ex parte Nebraska*, and, lastly, applied in *Ex parte Gruetter*, it clearly results that the application for leave is without merit, and

*Leave to file is denied.*